CASE 42—PETITION ORDINARY—JUNE 5.

# Todd vs. Bank of Kentucky.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1.  Gray & Todd drew a bill in favor of H. I. Todd upon "*R. P. Pepper, Frankfort, Kentucky.*" Pepper accepted by writing his name across the face of the bill. H. I. Todd indorsed it as an accommodation indorser. When the parties discounted the bill in bank at Frankfort, the words "*accepted, payable at the Northern Bank, Lexington,*" were written over the name of the acceptor, without the knowledge or consent of the indorser. This did not release the indorser.

2.  When no place of payment is fixed in the bill, the acceptor has an implied authority to appoint and designate a place of payment.

3.  The indorsement of a bill, for the accommodation of the drawer and acceptor, carries with it an implied authority that they may appoint a place of payment, when such place is not fixed in the face of the bill. The conclusions of the case of *Rogers, &c., vs. Poston* (1 *Met.*, 643), are approved, so far as consistent with this opinion, but the argument in that case is disapproved.

CRADDOCK & TRABUE and
JOHN MASON BROWN,                    For Appellant,

CITED—

*Edwards on Bills*, 405, 383, 272, 430.

2 *Broad. & Bing.*, 168; *Rowe vs. Young.*

1 *Met.*, 643; *Rogers vs. Poston.*

*Byles on Bills*, 149.

*Story on Bills*, secs. 239, 240.

3 *Kent*, 6th ed., p. 86.

1 *Parsons on Notes and Bills, pp.* 351, 352.

25 *Eng. Law and Eq. R.*, 123; *Burchfield vs. Moore.*

T. N. & D. W. LINDSEY,                    For Appellee,

CITED—

1 *Met.*, 647; *Rogers vs. Poston.*

*Edwards on Bills and Notes, p.* 94.

2 *Parsons on Bills and Notes, pp.* 558, 559.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The appellee, as holder, brought suit upon a bill of exchange for seven thousand dollars, at six months' time, dated July 4, 1867, drawn by Gray & Todd to order of H. I. Todd, addressed to R. P. Pepper, Frankfort, Kentucky, which appears to be accepted by him, payable at the Northern Bank, Lexington. The place where drawn does not appear in the bill.

Todd, as indorser, resists any recovery against him, because, as he avers in his answer, that, when he indorsed the bill, Pepper had accepted it by writing his name across the face; that he was a mere accommodation indorser, and got none of the proceeds, which was well known to the bank when it took the bill; and that, at the sole instance and procurement of the bank, the words "*accepted, payable at the Northern Bank, Lexington*," were written over the acceptor's name, without the knowledge or consent of the indorser; but it nowhere avers that this was done without the consent of the drawers and acceptor, or either of them; and it is evident, from the answer, that either the drawers and acceptor of the bill, or one of them, negotiated it.

To this answer a demurrer was sustained and exceptions. Another issue was formed and found against the indorser, which, being justified by the evidence, no further notice will be taken of it.

The third paragraph of the answer, to which a demurrer was sustained, also depends on the question above stated and relied upon in the first paragraph; therefore, it need be not otherwise noticed than as connected with the first defense.

It is insisted that, by the commercial law, as recognized in England and the American States, and which should prevail in Kentucky, that the writing the name across

the face of the bill by the drawee was a general and unqualified acceptance; and that the words placed over his signature afterwards, without the indorser's consent, turned this general, unconditional acceptance, into a qualified one, and was a material alteration of the contract, which released the indorser, as he had no knowledge of it.

In *Story on Bills, section* 239, it is said: An acceptance is general when it imports an absolute acceptance, precisely in conformity to the tenor of the bill itself. It is conditional or qualified, when it contains any qualification, limitation or condition, different from what *is expressed on the face of the bill, or from what the law implies*, upon a general acceptance. It is qualified when the drawee absolutely accepts the bill, but makes it payable at a different time or *place*, or for a different firm, or in a different mode from that which is the *tenor* of the bill.

And in section 243, it is said that an acceptance, whether it be in writing or verbal, may be by express words or by reasonable implication.

Any written words, clearly denoting a present intention to accept or honor a bill, will be deemed an acceptance, although, certainly, the appropriate mode is to express in positive terms; as, for example: "January 1, 1842. Accepted to pay according to tenor of the bill;" or, "I accept to pay this bill;" or, simply "accepted;" but any other words will suffice, if expressive of the same intent, or admitting of no other reasonable and just interpretion, as "honored," or "presented," or "seen," or *his own signature in blank. Such circumstances, if not otherwise explained, would be deemed an acceptance; so, if he should write his name across the face of the bill.*

And in section 240 it is said, the holder is entitled to have an absolute, unconditional, and unqualified acceptance of the bill as drawn; *and he is not bound to take any other;* and approvingly quotes from Mr. Justice Bayley, in his work on Bills (*chap.* 6, *sec.* 1, *p.* 175), that, though any acceptance varying from the tenor will bind the person making it, the holder of a bill is entitled, from the undertaking of the drawer and indorser, to expect an absolute acceptance for the full sum of money mentioned therein, according to its tenor, *specifying* (if none be mentioned for the purpose) *a place for its payment;* and he may reject any other. Still, the holder may, at his peril and risk, take a conditional or qualified acceptance; and if the holder should take an acceptance varying in any respect from the tenor of the bill, whether conditional or qualified, or otherwise, in such case he must give notice thereof to the antecedent parties; and if he does not, they will not be bound by it, but will be absolved from all responsibility upon the bill. Indeed, it seems that notice, of itself, would not be sufficient without a protest for non-acceptance, according to the tenor of the bill. And in section 48, Story says: The *place of payment is understood to be the place where the drawee resides, or where, on the face of the bill, it is addressed to him,* unless some other place is stated upon the face of the bill. If, therefore, the bill is meant to be made payable at any other place than that where the drawee resides, or where the address to him is, it should be so expressed on the face of the bill; as, for example, a bill drawn on Liverpool, if intended to be accepted, payable in London, should be expressly so stated, otherwise it will be payable in Liverpool; but, in general, unless otherwise required by statute, *the place of payment need not be stated; but will be*

*implied, in the absence of all controlling circumstances, to be by law the place of residence of the drawee, or where his address is on the face of the bill.* And then the author gives various circumstances which will control this inference.

From all this it will be seen, that the place of payment is only an implication when no definite place is fixed; and whether it was contrary to the tenor of the bill for the acceptor to designate a place in such cases, was long a mooted question in England; but, in the case of *Rowe vs. Young, 2 Broadhead & Bingham,* 165; *2 Bligh's Reports,* 391, it was decided by the House of Lords that it was a qualified acceptance. This rule was afterwards altered by *Statute* 1 and 2 *George,* which provided that such an acceptance should be deemed general, unless exclusive words were added, such as " and not elsewhere," or other equivalent words. But there seems to be no direct decision by these authors upon the question whether, in the absence of any specified place of payment in the face of the bill, an implied power in the acceptor to appoint a place should be inferred.

The approved quotation from Bayley by Story, in section 240, certainly indicates that both these authors are inclined to regard this as an implied power in the acceptor; for it is there said, the holder has the right to " expect an absolute acceptance by the drawee for the payment of the full sum mentioned therein, according to its tenor, *specifying, if none be mentioned for the purpose, a place of payment.*"

If the holder has a right, in such cases, to expect the acceptor to appoint a place of payment, and he should do so, this would repel the implication that it was to be paid at the residence of the drawee, or place addressed to him; and perhaps a distinction was intended be-

tween fixing a place by the acceptor when a place of payment is appointed in the face of the bill; and when not, as a different place designated by the acceptor in the former case would be clearly inconsistent with the tenor of the bill, as expressed, whilst, in the latter, it would not, because the implied place of payment would be subordinate to the implied right of the acceptor to appoint this; and, although we might be inclined to deny this implied power in the drawee as the better opinion, if this question was now for the first time before this court, yet, in the face of an express decision of this tribunal, which has remained for ten years unaltered by legislative action or judicial construction, and when hundreds of thousands of dollars of this class of paper have been taken, and is perhaps now held on its faith, and regarding this rule, since the adoption of it by this court, as impliedly entering into all such contracts, we do not deem it of sufficient importance to overrule it, and thus unsettle a recognized rule of contracts, and perhaps jeopardize a large amount of such paper. Beside, there is much reason, when the paper is for the accommodation of the drawers and acceptor, as in this instance, to infer, from the transaction and nature of the paper, an implied authority in those for whose use it is made to appoint the place of payment, unless one has been already expressly designated in the bill, as this would more generally make the paper answer the purposes of the beneficiaries and objects of its creation. As neither the drawers nor acceptor put in any defense, and as the bill was made for their benefit, it may fairly be presumed that the place of payment, though written by the cashier of the bank, and at his instance, was assented to by them before they parted with it, or before the bank became the holder, which

would have been negatived by the answer. Moreover, the general custom of the banks of this State not to take bills payable at their place or town of business, growing out of legislative enactment prohibiting them from taking a greater rate than six per cent. interest on such paper, still stronger fortifies this implied power in the drawers and acceptor to fix the place of pay-ment, else it would not have answered the purpose of the accommodation indorsement.

In *Burchfield vs. Moore* (25 *English Law and Eq. Rep.*, 125), the Queen's Bench, in 1854, very properly decided, that where the drawee had accepted the bill by writing "accepted," and after its issual the holders thereof, without his consent, added the words "*payable at the Bull's Inn, Aldgate;*" "that such words, although they do not alter the direct liability of the acceptor, do vary the contract between others who are parties to the bill; therefore, that if interpolated without his consent, may prejudice the acceptor."

But here were words added to the acceptance after it had been written, by the holder, who certainly had no implied power to fix the place of payment, and of course, having altered the contract of acceptance, and affected the rights of other parties to the bill without the acceptor's consent, he was released. But this ques-tion was directly before this court at its winter term, 1858, in *Rogers et al. vs. Poston* (1 *Met.*, 643), and then adjudicated, and the indorsers of such a bill held re-sponsible, notwithstanding the drawee had accepted it and fixed the place of payment different from that of his residence, or where addressed to him. This opinion is justly liable to criticism as somewhat lacking logic, and perhaps denying some well-established principles of commercial law. Still, with these supposed infirm-

ities, its conclusions are not so liable to animadversion, and we are still inclined to adhere to it so far as consistent with this opinion, but not for the reasons assigned in its argument, especially in cases of mere accommodation indorsements for the benefit of drawers and acceptors; for, in such cases, the indorsee knows that it is not drawn on funds.

As said by *Edwards on Bills*, 409, in the ordinary course of business, the bill is supposed to be drawn on funds, and the understanding that the drawer appropriates and directs his own money to be paid to the person named as payee in the bill, or to his order; and the acceptance is the admission that this is the relation in which the parties stand to each other.

It happens, very frequently, that the acceptor is not the original debtor in fact; in such cases he is, of course, never liable to the party for whose accommodation he accepts the bill; as to him he is a surety, and entitled to the privileges and protection of one who stands in that relation towards another; while, as to third persons who take it for value, the acceptor is responsible just the same as though he had accepted for a valuable consideration.

Again, at page 406, Edwards says: As against the maker of a note or the acceptor of a bill, a demand on the day and at the place where payable, is not in the nature of a condition precedent; and, therefore, it lies with the defendant, in such cases, to aver and prove that he was ready to pay at the time and place appointed. But when the action is against an indorser of a note, or the drawer or indorser of a bill, a demand at the place of payment is material, and necessary to be shown.

If a note is drawn or a bill accepted, payable at a bank, the contract of the drawer or indorser being a conditional undertaking to pay, in case the maker or acceptor does not, on due presentment for that purpose, it is the duty of the holder to demand payment at the time and place appointed. Notwithstanding the indorsement, as in this case, should be for the accommodation of the drawer and acceptor, and carry with it an implied authority that they may appoint the place of payment, in the absence of such being fixed in the face of the bill, yet his undertaking to pay is conditional upon the non-payment of the acceptor, upon due presentment at the appointed place of payment, which was done in this case.

We think this presumption of implied authority, in cases where no place of payment is fixed in the bill, on the part of the acceptor to appoint it, both convenient and as free from danger as to leave it on the presumption of payment at drawee's residence, or place where addressed, and a custom which has grown into much use and favor, especially in that class of accommodation commercial paper to which this bill belongs.

Wherefore, the judgment is affirmed.